UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MONTERREY ARMAND WOODS,

                Plaintiff,        Civil Action No.: 14-14932
                                 Honorable George Caram Steeh
                v.          Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 15, 18]

      Plaintiff Monterrey Woods appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act (the "Act").  Both parties have filed

summary judgment motions, referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The Court finds

that the Administrative Law Judge ("ALJ") failed to properly analyze the

medical opinions of record, resulting in a residual functional capacity

assessment ("RFC") not supported by substantial evidence.  For these

reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 18]** be **DENIED**;

- Woods' motion **[R. 15]** be **GRANTED**; and,

- the Commissioner's decision be **REVERSED AND REMANDED** for further consideration, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Claimant's Background and Claimed Disabilities

As of the date of the administrative hearing, Woods was thirty-two years old, had completed the tenth grade, and had previously worked as a car wash attendant, cleaner and inventory clerk.  He claimed disability due to a personality disorder and anger management issues.  [R. 11-6, Tr. 181].

### B.   Procedural History

Woods filed applications for DIB and SSI, alleging disability as of July 7, 2007.  [R. 11-5, Tr. 154-64].  The claims were denied initially, and Woods filed a timely request for an administrative hearing, held on July 26, 2013, at which both he and a vocational expert ("VE") testified.  [R. 11-2, Tr. 32-60; R. 11-4, Tr. 80-102].  The ALJ found Woods not disabled and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [R. 11-2, Tr. 1-5, 12-31].  Woods timely filed for judicial review.

2

### C.     The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Woods was not disabled. At step one, he determined that Woods had not engaged in substantial gainful activity since his alleged onset date. [R. 11-2, Tr. 17]. At step two, he identified severe impairments of "depression, impulse control, not otherwise specified/intermittent explosive disorder/personality disorder." [*Id.*]. At step three, the ALJ determined that none of Woods' impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.*, Tr. 18-19]. In making this determination, the ALJ found that Woods had no more than mild limitations in activities of daily living, marked difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace with no episodes of decompensation. [*Id.*, Tr. 19].

Next, the ALJ assessed Woods' RFC, finding him capable of a limited

4

range of medium work with the following non-exertional limitations:

> limited to hearing and understanding simple oral instructions and limited to communicating simple instructions. He should avoid hazards such as[ ] heights or machinery but he is able to avoid [sic] ordinary hazards in the workplace, such as boxes on the floor, doors ajar or approaching people or vehicles. He should never have exposure to extreme heat or extreme cold. He is limited to simple, repetitive, routine tasks, but is not able to perform at a production pace (for example[,] assembly line work) but can perform goal-oriented work (such as an office cleaner). He is limited to simple work[-]related decisions. He can have frequent interactions with supervisors (such contact would be direct and non-confrontational). He is limited to occasional contact with coworkers (consisting of a small group of individuals with contact that would be casual in nature). He cannot have contact with the public. He is limited to tolerating few changes in a routine work setting and when said changes do occur, they would need to take place gradually and would occur infrequently.

[*Id.*, Tr. 19-20]. At step four, the ALJ concluded that Woods' RFC prevented him from returning to his past relevant work. [*Id.*, Tr. 25]. At step five, with the assistance of VE testimony, the ALJ determined that a hypothetical claimant matching Woods' profile could perform a substantial number of jobs in the national economy, such that he was not disabled, including food preparation worker (174,000 jobs nationally), inspector (38,000 jobs) and equipment cleaner (195,000 jobs). [*Id.*, Tr. 26].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence

5

and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based

6

upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Woods is not disabled is not supported by substantial evidence.

7

## III.   ANALYSIS

Woods argues that the ALJ failed to properly analyze the medical opinions of record, and found him less than fully credible for unsupported reasons.  The Court agrees that the ALJ's weighing of the medical opinions lacks substantial evidentiary support and requires remand.

### A.

An ALJ is required to consider all medical opinions, and "[t]he opinion of an examining medical source is generally given greater weight than the opinion of a non-examining source."  *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 525 (6th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(1).  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (same).  Thus, opinions from State agency physicians "can be given weight only insofar as they are supported by evidence in the case record . . . ."  Soc. Sec. Rul. No. 96–6p at 2.  When weighing any medical opinion, an ALJ is required to consider the factors of supportability, consistency with the record and specialty.  20 C.F.R. § 404.1527(c).

8

With regard to supportability, the *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989), opinion is instructive when the plaintiff claims disability due to mental illness.  In *Blankenship*, the ALJ had discounted the opinion of a psychiatrist, reasoning that the psychiatrist had examined the plaintiff only once, that there was no clear diagnostic picture and that the plaintiff's complaints were inconsistent with documented clinical findings. *Id.* at 1121.  Rejecting this analysis, the court noted that it is not uncommon for mental disorders to be diagnosed after one interview.  *Id.*  The court additionally disputed that medical evidence contradicted the psychiatrist's opinion, and emphasized that the psychiatrist had relied upon the type of medical findings that are relevant for diagnosing mental illnesses.  *Id.* at 1121.

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Id.* (citation and internal quotation marks omitted).

### B.

Here, Nathalie Menendes, Psy.D., issued an opinion after she examined Woods in September 2012.  [R. 11-7, Tr. 224-27].  Her

9

examination included detailed descriptions of Woods' complaints and symptoms, treatment, medication, personal history, daily and social functioning, past and present interests, and activities. [*Id.,* Tr. 224-25]. Dr. Menendes recorded her general observations and the results of a mental status examination. [*Id.,* Tr. 225-27]. She described Woods as being often vague but not as exaggerating his symptoms; he may have been minimizing them due to lack of insight. [*Id.,* Tr. 226]. She concluded that Woods would be "able to perform and remember concrete, repetitive, and tangible tasks such as grooming and hygiene activities." [Id., Tr. 227].

> However, his psychological symptoms are severe and will interfere with his ability to perform any job duty, simple or complex, on a consistent and reliable basis. He does not handle frustrating situations well and should not be expected to be able to cope with stress or difficult situations in the work setting. His social skills [are] minimal and he is not able to interact appropriately with others, especially when situations become conflictual.

[*Id.*, Tr. 227]. Dr. Menendes diagnosed Woods with major depressive disorder, recurrent, severe, intermittent explosive disorder and personality disorder not otherwise specified, and issued him a guarded prognosis and a Global Assessment of Functioning ("GAF") score of 43, which is

indicative of severe symptoms.  [*Id*.].[3]

Reviewing Dr. Menendes's opinion, the ALJ dismissed the low GAF score as being a result of Woods' "detached and often vague responses," and opined that Dr. Menendes's failure to immediately refer Woods for hospitalized mental health treatment was inconsistent with the finding of serious limitations of functioning.  [R. 11-2, Tr. 21].  The ALJ then gave Dr. Menendes's opinion little weight, reasoning that that the information that Woods relayed to Dr. Menendes was inconsistent with his other statements in the record or testimony.   [R. 11-2, Tr. 21-22].  The allegedly inconsistent statements the ALJ identified were that Woods had denied past or present substance abuse to Dr. Menendes, while a record stated that he used marijuana daily; that Woods denied ever being arrested despite his reports to Dr. Menendes that he had often gotten into fights; and that he reported to Dr. Menendes that he had attempted suicide three times, but had never had mental health treatment.  [*Id*., Tr. 21-22].  The ALJ stated that Dr. Menendes found Woods' responses to be vague and not forthcoming, and that Dr. Menendes's opinion was merely a "snapshot

---

[3] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below."  *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

of the claimant rather than a lengthy history of treatment." [*Id.*, Tr. 22]. Finally, the ALJ cited the opinion of non-examining State agency psychologist Wayne Hill, Ph.D.,[4] whose opinion he gave great weight, as deeming questionable Woods' credibility during his examination by Dr. Menendes. [*Id.*, Tr. 22].

## C.

The ALJ's reasoning for the weight he gave these consultants is not supported by substantial evidence. The ALJ's reliance on the fact that Dr. Menendes examined Woods only once is unsustainable, given the rejection of that reasoning in *Blankenship*. *Blankenship*, 874 F. 2d at 1121. In that opinion, the Sixth Circuit further emphasized that clinical observations by trained professionals constitutes relevant clinical data supporting mental illnesses diagnoses. *Id.* Yet, the ALJ second-guessed the cause of Dr. Menendes's GAF and diagnoses, and assigned his own meaning to Woods' detached and vague responses during the examination; he impermissibly played doctor by substituting his own judgment for that of a psychologist whose opinions were supported by her mental health examination. *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009).

---

[4] The ALJ's opinion misidentified Dr. Hill as an "M.D." and a "State agency psychiatrist." [R. 11-2, Tr. 22].

Further, the ALJ's analysis of Dr. Menendes opinion was built on a

foundation of dubious assumptions: that someone who often gets into fights

would necessarily have a record of arrests,[5] that someone who has

attempted suicide would necessarily have sought mental health treatment

afterwards, and that a consulting psychologist who finds a claimant to have

serious limitations in functioning would refer him for immediate

hospitalization.[6]

Moreover, the ALJ failed to consider the consistency of Dr.

Menendes's opinion with the treatment notes and conclusions of other

mental health providers.  The month after Dr. Menendes examined Woods,

he began treatment at Janes Street Academic Community Health Center,

voluntarily submitting to a short period of inpatient treatment followed by

outpatient treatment that continued up until at least the date of the

administrative hearing.  [R. 11-7, Tr. 241-69, 271-81, 283-85, 331-39, 345-

47].  Woods was issued GAF scores between 31 and 50, was consistently

noted to have irritability, anger management issues, a depressed mood and

a flat affect, and tried several different medications that caused unwanted

---

[5] Notably, Woods testified that he had previously had police encounters due to his anger, but that they had not resulted in arrest.  [R. 11-2, Tr. 46].
[6] Both parties agree that the regulations grant the Commissioner, but not consultative examiners, the authority to disclose to treating sources the results of consultative examinations.  [R. 15, PgID 404 (citing 20 C.F.R. §§ 404.1519p(c) and 416.919p(c); R. 18, PgID 437 (same)].

side effects or that he later was unable to afford.  [*Id.*, Tr. 251, 253, 255, 260, 262, 265, 268-69, 271-72, 275-76, 280-81, 283-84, 345-48].  Therapy notes during this time revealed little progress and reflect that, at one point, Woods reported that he had not left the house in a month.  [*Id.*, Tr. 264-69, 271-72].  The ALJ was required by § 404.1527(c) to consider whether Dr. Menendes's opinion was consistent with these records, but he failed to do so.

### D.

The ALJ also erred by relying on Dr. Hill's opinion to question Woods' credibility during his examination with Dr. Menendes, and by giving significant weight to Dr. Hill's opinion. Dr. Hill's opinion was derived from his review of Dr. Menendes's findings and Woods' reported activities of daily living.  [R. 11-3, Tr. 63-71].  Despite finding that Woods' statements about his psychological symptoms were "mostly credible" and consistent with the medical evidence, and despite giving "great weight" to Dr. Menendes's report, Dr. Hill contradictorily called Woods' credibility into question based upon general tendencies of people with antisocial personality disorders.  [*Id.*, Tr. 67-69].  According to Dr. Hill, Woods was moderately limited in his ability to be supervised, get along with co-workers and maintain socially appropriate behavior.  [*Id.,* Tr. 69].  Given these

14

limitations, Dr. Hill opined that Woods would "perform better in small groups or under circumstances in which claimant has limited, (brief and superficial) contact with others[,] or[ ] function better alone, under conditions in which pressure of employment demands are reduced." [*Id.*].

The ALJ gave Dr. Hill's opinion significant weight, claiming that it was consistent with unspecified probative evidence, and finding persuasive Dr. Hill's suggestion that Woods was not credible or forthcoming during Dr. Menendes's assessment of him based upon the tendencies of individuals with personality disorders. [R. 11-2, Tr. 22]. Although the ALJ gave Dr. Hill's opinion significant weight, he inexplicably found that Woods had marked (rather than moderate) limitations in social functioning, and then paradoxically concluded that Woods could have frequent interaction with supervisors, even though Dr. Hill's opinion indicated that moderate limitations meant that Woods could only have brief and superficial interaction with others. [*Id.*, Tr. 19, 22; R. 11-3, Tr. 69].

Since Dr. Hill did not examine Woods and did not observe Woods during his examination by Dr. Menendes, and since Dr. Menendes based her diagnosis in part on her observations, the ALJ's decision to give more credence to Dr. Hill's credibility assessment was clear error. *Keeton,* 583 F. at 525; 20 C.F.R. § 404.1527(c)(1); Soc. Sec. Rul. No. 96–6p, 1996 WL

15

374180, at *2; *Gayheart,* 710 F.3d at 375; *Blankenship,* 874 at 1121.

Examining sources are generally given more weight than non-examining

sources, as observations by trained psychologists constitutes competent

evidence of a claimant's mental health. *Id.* Indeed, since Dr. Hill's

credibility determination was grounded solely in the general tendencies of

individuals with personality disorders rather his personal observations of

Woods or other evidence in the record, the ALJ should have given it no

weight. Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (opinions from

State agency physicians "can be given weight only insofar as they are

supported by evidence in the case record . . . ."). The ALJ's decision to

give significant weight to the credibility opinion of a non-examining source

is especially specious in light of his rebuff of Dr. Menendes's opinion based

on the fact that she examined Woods only once.

Further, Dr. Hill's opinion lacked supportability, internal consistency,

and consistency with other evidence in the record. His opinion deemed

Woods credible and consistent with the medical evidence, but then called

his credibility into question. Dr. Hill gave Dr. Menendes's opinion great

weight, but then disregarded her conclusions that Woods did not appear to

exaggerate his symptoms, that his psychological symptoms are severe and

would interfere the performance of job duties, and that he has minimal

social skills that render him incapable of interacting appropriately with others.  The ALJ claimed that Dr. Hill's opinion was consistent with other probative evidence, but did not specify any.  For these reasons, the ALJ's analysis of the weight he gave to Dr. Hill's opinion is not supported by substantial evidence.

## E.

Ultimately, the ALJ's bridge between the evidence and his conclusions is neither logical nor supported by the evidence of record.  *See Jones v. Comm'r of Soc. Sec.,* No. 14-14809, 2015 WL 5730024, at *10 (E.D. Mich. Sept. 1, 2015) report and recommendation adopted, No. 14-14809, 2015 WL 5697696 (E.D. Mich. Sept. 29, 2015).  As such, the ALJ's conclusion that Woods has the RFC to perform medium work with the specified limitations is not supported by substantial evidence, and the Court recommends that the matter be remanded for further consideration in light of this Report and Recommendation. [7]

## F.

The Court further recommends that the ALJ be directed to reconsider

---

[7] Notably, although the ALJ claimed to give great weight to Dr. Hill's opinion, he failed to explain the RFC indicating that Woods could engage in frequent interaction with supervisors when Dr. Hill's opinion limited Woods to only brief and superficial interaction with others.  [R. 11-2, Tr. 19, 22; R. 11-3, Tr. 69].

17

his credibility determination on remand, as he omitted or misconstrued much of the evidence supporting Woods' subjective statements, including his reasons for not continuing certain medications (due to side effects and financial constraints), and the state of his mood when not on medications (the ALJ characterized it as "stable" when the treatment records show otherwise).  [R. 11-2, Tr. 22-25; R. 11-7, Tr. 245-48, 253-63, 267-69, 271, 280-81, 283-85, 345-47].

## IV.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Woods' Motion for Summary Judgment **[R. 15]** be **GRANTED**, the Commissioner's Motion **[R. 18]** be **DENIED** and this case be **REVERSED AND REMANDED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 7, 2016

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 7, 2016.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager

20